LIBERTY MUTUAL INSURANCE COMPANY and Paul M. Foman, Appellants,

v.

William BURGESS, Appellee.

LIBERTY MUTUAL INSURANCE COMPANY and Alfred Dintaman, Appellants,

v.

Melvin CORNELIUS, Appellee.

Nos. 6651, 6652.

District of Columbia Court of Appeals.

Submitted Dec. 14, 1972.

Decided Aug. 3, 1973.

---

Colin R. C. Dyer, Washington, D. C., was on the briefs for appellants in both cases.

No appearance was filed on behalf of either appellee.

Before PAIR, YEAGLEY, and HARRIS, Associate Judges.

HARRIS, Associate Judge:

This case presents a novel question of statutory interpretation involving the interrelationship between the District of Columbia long arm statute (D.C.Code 1972 Supp., § 13–401 et seq.) and the relevant provisions of the Motor Vehicle Safety Responsibility Act (hereinafter SRA) (D.C.Code 1967, §§ 40–417 through 40–498c).

The SRA was enacted in 1954.[1] One of its key purposes was to provide persons suffering damage or injury in the District of Columbia from the negligent actions of a nonresident motorist with a means of obtaining personal jurisdiction over the nonresident in the District of Columbia courts. D.C.Code 1967, § 40–423. Its utility has been limited by the requirement that an injured plaintiff file a surety bond for the protection of the defendant before an action could be commenced.[2] The District of Columbia Court Reorganization Act of 1970 included long arm provisions which expanded the bases and simplified the procedures for securing personal jurisdiction over nonresident defendants. We here consider whether the long arm statute provides an alternative, independent procedure for initiating an action against a nonresident motorist. We conclude that it does.

I

The two cases consolidated on appeal arose out of separate automobile accidents which occurred in the District of Columbia. In each instance, the individual plaintiff and his insurance carrier initiated an action for property damage in the Small Claims and Conciliation Branch of the Civil Division of the Superior Court. Neither defendant was a resident of the District of Columbia. Section 13–423(a)(3) of the Code (1972 Supp.) provides for personal jurisdiction in the District of Columbia courts over a person "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia". Service on each defendant was effected outside this jurisdiction pursuant to the new long arm provisions of the Code.[3]

1. Its provisions with respect to service of process on nonresident motorists had been codified earlier as part of the Owners' Financial Responsibility Act, which the SRA superseded. 49 Stat. 166, Ch. 89, §§ 1–17 (1935).

2. . . . *Provided*, That the plaintiff in such action shall first file in the court in which said action is commenced an undertaking in form and amount . . . approved by said court, to reimburse the defendant, on the failure of the plaintiff to prevail in the action, for the expenses necessarily incurred by the defendant, including a reasonable attorney's fee in an amount to be fixed by the said court in defending the action in the District of Columbia . . . .

3. D.C.Code 1972 Supp., § 13–431 provides in pertinent part as follows:
(a) When the law of the District of Columbia authorizes service outside the District of Columbia, the service, when reasonably calculated to give actual notice, may be made—
(1) by personal delivery in the manner prescribed for service within the District of Columbia;

Neither defendant filed an answer or appeared, and a default judgment was entered against each. When ex parte hearings were scheduled to be held on damages, the trial court, sua sponte, quashed service and vacated the default judgments. Plaintiffs had not filed bonds pursuant to section 40-423(a), and the trial court concluded that the bond requirement of the SRA was unaffected by the enactment of the long arm statute. This court granted the plaintiffs' applications for allowance of appeal, since the question is an important one upon which judges of the trial court have reached differing conclusions.

## II

The problem of minimum jurisdictional prerequisites to the maintenance of an in personam action against a nonresident motorist has received Supreme Court scrutiny, first in Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), and later in Olberding v. Illinois Central R. Co., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953). In those decisions, the Court found that the requirements of due process were met by provisions of nonresident motorist stat-

utes which were similar to that in the District of Columbia but which did not have bond requirements.[4] Certainly the posting of a bond is not required by the Constitution. The District of Columbia's bond provision appears to have been included in the SRA because of the desire of members of Congress to protect their traveling constituents from frivolous suits. 79 Cong.Rec. 6556 (1935).[5]

## III

Our long arm statute was enacted as a part of the broad District of Columbia Court Reorganization Act of 1970. There are few references to its provisions in the legislative history. The Senate Report summarizes its purpose as follows:

> [It] grants expanded bases of jurisdiction and modes of service identical to or reciprocal with those provided under the laws of . . . Maryland for the courts of that State, and substantially the same as those . . . of Virginia and approximately ten other states.[6]

The first two sections of the long arm statute codify that legislative intent.[7]

---

. . . . .
    (3) by any form of mail addressed to the person to be served and requiring a signed receipt; . . . .
Defendant Cornelius was served by certified mail; defendant Burgess was served by substituted personal service (upon his father at defendant's home).

4. The Court stated in *Olberding, supra* at 341, 74 S.Ct. at 85:
    The potentialities of damage by a motorist, in a population as mobile as ours, are such that those whom he injures must have opportunities of redress against him provided only that he is afforded an opportunity to defend himself. We have held that this is a fair rule of law . . . and that the requirements of due process are therefore met.

5. All states have passed some type of nonresident motorist legislation, with very few containing any bond provision. *See, e. g.,* Ark.Stat.Ann. § 27-342.1 et seq. (1962); 29 Me.R.S.A. § 1911 et

seq. (1964), as amended, (Cum.Pocket Supp.1972-73); W.Va.Code Ann. § 56-3-31 (1966). Those statutes specified bonds of fixed amounts, whereas § 40-423 leaves the amount to judicial discretion.
    The Arkansas bond provision was repealed in 1960 because it placed undue hardships "upon many victims of accidents involving nonresident motorists . . . thereby preventing them from having their rights litigated in court." Comment to Ark.Stat.Ann. § 27-342.2 (1962).
    *See generally* Jox, Non-Resident Motorists Service of Process Acts, 33 F.R.D. 151, 160 (1964).

6. S.Rep.No.405, 91st Cong., 1st Sess. 35 (1969); *see also* H.R.Rep.No.907, 91st Cong., 2d Sess. 61 (1970); D.C.Code Legis. & Ad.Serv. 458 (1970).

7. § 13-401. *Relation to other provisions of law*
    Except in cases of irreconcilable conflict, this chapter shall be construed

■ Tortious conduct involving the use of an automobile unquestionably would fall within the scope of § 13–423(a)(3) unless the SRA is interpreted as carving an exception into the broad applicability of the long arm statute.[8] It normally is true that a specific statute controls a general one. Bulova Watch Co. v. United States, 365 U.S. 753, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961). Nevertheless, in this situation we find a Congressional intent that the long arm statute exist independently as an alternative method of asserting personal jurisdiction over a nonresident motorist defendant.

The first two sections of our long arm statute (*supra* note 7), when read in conjunction with the relevant legislative history, reflect a Congressional intent that the District of Columbia statute be broadly applicable and reciprocal with similar statutes in other jurisdictions. It contains no bond provision, and such an intent could not be fully realized if a plaintiff who wishes to sue a nonresident motorist in this jurisdiction were forced to file a bond pursuant to our SRA. A rule to such an effect would make it more difficult to sue a nonresident motorist in the District of Columbia than in the other jurisdictions with similar statutes (irrespective of whether service is effected in those states pursuant to a long arm statute or a specific nonresident motorist statute).

■ When our original nonresident motorist statute was enacted, its overriding objective was to place the victims of automobile accidents involving nonresident motorists in a preferred position in relation to other categories of plaintiffs. In our view, it would be both illogical and anomalous to construe the long arm statute in such a way as now to place that same group of persons in a procedurally disadvantageous position, since after all the long arm statute is but a further extension of the principle that a party who inflicts harm on another should not escape the duty to defend his actions merely because of the fortuity of geographical boundaries. We conclude that Congress intended to place all injured plaintiffs in an equal position with respect to the availability of the procedures established by the long arm statute, and that it and the SRA must be deemed to provide separate and alternative means of acquiring in personam jurisdiction over nonresident motorists.[9] Accordingly, the orders vacating the default judgments are set aside.

Reversed and remanded.

---

to augment, and not to repeal, any other law of the District of Columbia authorizing another basis of jurisdiction or permitting another procedure for service in civil proceedings in the District of Columbia courts.

§ 13–402. *Uniformity of interpretation*

When the statutory language so permits, this chapter shall be so interpreted and construed as to make it uniform with the laws of those jurisdictions which enact in comparable form the first two articles of the Uniform Interstate and International Procedure Act.

8. Section 13–423 is based upon § 1.03 of the Uniform Interstate and International Procedure Act. State statutes based up-

on the model act consistently have been upheld as constitutional. *See, e. g.,* Gilper v. Kiamesha Concord, Inc., D.C.App., 302 A.2d 740 (1973); Hardy v. Rekab, Inc., 266 F.Supp. 508 (D.Md.1967); Bowsher v. Digby, 243 Ark. 799, 422 S. W.2d 671 (1968); Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957); Foye v. Consol. Baling Mach. Co., 229 A.2d 196 (Me.1967); *accord,* Gilliam v. Moog Indus., Inc., 239 Md. 107, 210 A.2d 390 (1965).

9. Parks v. Slaughter, 270 F.Supp. 524 (W.D.Okl.1967); *cf.* Dobkin v. Chapman, 21 N.Y.2d 490, 289 N.Y.S.2d 161 (1968). *Contra,* Hatler v. Stout, 222 Tenn. 172, 434 S.W.2d 329 (1968) (but neither relevant Tennessee statute included a bond provision).