Asberry SANKER, Appellant,

v.

UNITED STATES, Appellee.

No. 7659.

District of Columbia Court of Appeals.

Argued Jan. 15, 1975.

Decided May 17, 1977.

Roy S. Lerman, Washington, D. C., appointed by the court, for appellant.

Paul N. Murphy, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, C. Madison Brewer, and Richard L. Cys, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted of second-degree murder. D.C.Code 1973, § 22–2403. The

crime is punishable by life imprisonment. D.C.Code 1973, § 22–2404. At the sentencing hearing, the government contended—and the trial court seemed to agree—that the Federal Probation Act, 18 U.S.C. § 3651 (1970), forbids probation because of the authorized life sentence.[1] Appellant was sentenced to imprisonment for a period of from five to 20 years (he has remained free on bond pending appeal). He contends that the court erred in relying on 18 U.S.C. § 3651 as precluding consideration of probation as a sentencing alternative. Although the Federal Probation Act is, by its terms, applicable to "any court having jurisdiction to try offenses against the United States," the Act's legislative history and the impact upon certain other local statutes of the interpretation urged by the government persuade us that the broad language of 18 U.S.C. § 3651 does not encompass the Superior Court. We therefore remand the case for resentencing in light of D.C.Code 1973, § 16–710, the provisions of which grant the trial court discretionary authority to order probation where appropriate.[2]

■ We recognize that most criminal prosecutions conducted in the Superior Court of the District of Columbia (i. e., all felonies and serious misdemeanors) are "conducted in the name of the United States by the United States attorney for the District of Columbia . . . ." D.C. Code 1973, § 23–101(c). Additionally, convicted defendants who are sentenced to imprisonment are committed to the custody of the Attorney General of the United States. D.C.Code 1973, § 24–425. Further, title 22 of the District of Columbia Code—setting forth the city's criminal laws and proce-

---

1. 18 U.S.C. § 3651 reads in pertinent part as follows:

    Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation, for such period and upon such terms and conditions as the court deems best.

2. The relevant language of § 16–710 is:

    In criminal cases in the Superior Court of the District of Columbia, the court may, upon conviction, suspend the imposition of sentence or impose sentence and suspend the execution thereof, for such time and upon such terms as it deems best, if it appears to the satisfaction of the court that the ends of justice and the best interests of the public and of the defendant would be served thereby.

dures—represents enactments of the Congress of the United States.[3] Thus, there is facial merit to the contention that prosecutions brought in the Superior Court in the name of the United States involve "offenses against the United States" within the meaning of 18 U.S.C. § 3651, making the Federal Probation Act applicable there as well as in the purely federal system. However, we conclude that the Federal Probation Act is limited in its intended applicability to violations of provisions of the United States Code, in contradistinction to District of Columbia Code offenses.

Initially, our decision comports with the realities of the different court structures as they exist within this unique jurisdiction. The United States District Court manifestly encompassed by the Federal Probation Act, has its own probation officials. The Superior Court, which was created by the District of Columbia Court Reform and Criminal Procedure Act of 1970, has an entirely different set of probation officers, who are employees of the District of Columbia, rather than of the federal government. In *Swain v. Pressley*, the Supreme Court recognized that court reorganization here "created a new local court system and transferred in its entirety the Federal District Court's responsibility for processing local litigation to the Superior Court of the District of Columbia." —— U.S. ——, 97 S.Ct. 1224, 1226, 51 L.Ed.2d 411 (1977) (footnote omitted).

█ Further, we find this case to be an inappropriate one for the application of the "plain meaning" rule. In *Lynch v. Overholser*, 369 U.S. 705, 710, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962), the Supreme Court placed the plain meaning rule in perspective:

The decisions of this Court have repeatedly warned against the dangers·of an approach to statutory construction which confines itself to the bare words of a statute, *e. g., Church of the Holy Trinity v. United States* [*sic*; should be *Rector of Holy Trinity Church v. United States*], 143 U.S. 457, 459–62, 12 S.Ct. 511, 512–513, 36 L.Ed. 226 [1892]; *Markham v. Cabell*, 326 U.S. 404, 409, 66 S.Ct. 193, 195, 90 L.Ed. 165 [1945], for "literalness may strangle meaning," *Utah Junk Co. v. Porter*, 328 U.S. 39, 44, 66 S.Ct. 889, 892, 90 L.Ed. 1071 [1946].

Courts have recognized that the rule is an unreliable guide where the statutory language is unclear. *E. g., International Telephone & Telegraph Corp. v. General Telephone & Electronics Corp.*, 518 F.2d 913, 917–18 (9th Cir. 1975); *District of Columbia v. Orleans*, 132 U.S.App.D.C. 139, 141, 406 F.2d 957, 959 (1968). "Where the words are ambiguous, the judiciary may properly use the legislative history to reach a conclusion." *United States v. Public Utilities Commission*, 345 U.S. 295, 315, 73 S.Ct. 706, 718, 97 L.Ed. 1020 (1953). "Whether or not the words of a statute are clear is itself not always clear." *Barbee v. United States*, 392 F.2d 532, 535 n. 4 (5th Cir.), *cert. denied*, 391 U.S. 935, 88 S.Ct. 1849, 20 L.Ed.2d 855 (1968). *See March v. United States*, 165 U.S.App.D.C. 267, 274–75, 506 F.2d 1306, 1313–14 (1974).

█ Despite its superficial clarity, we find ambiguity in the phrase "any court with jurisdiction to try offenses against the United States." Three possible "plain meanings" could be ascribed to this phrase. It could refer to courts with jurisdiction to try crimes against the United States in its character as the national sovereign, but not in its role as a local governing power. Viewed differently, it could encompass all courts with jurisdiction to try cases brought by the United States, including the various military courts. Finally, the phrase could refer to courts with jurisdiction to try non-military cases prosecuted by the United

---

**3.** Congress enacted the District of Columbia Self-Government and Governmental Reorganization Act on December 24, 1973. Pub.L. 93–198, 87 Stat. 777, codified as D.C.Code 1976 Supp., § 1–121 *et seq.* It precluded the Council of the District of Columbia from modifying title 22 of the Code (as well as titles 23 and 24) for two years from its date of enactment. D.C. Code 1976 Supp., § 1–147(a)(9). Later, Congress extended that ban for an additional two years. Pub.L. 94–402, 90 Stat. 1220. ·

States in whatever capacity, either as a national government or as the source of local government as in the District of Columbia. The plain meaning rule thus is of little help. Indeed, here it entices us to abdicate our duty by suggesting that the problem is a simple one. However, with 18 U.S.C. § 3651 and § 16–710 of the D.C.Code in irreconcilable conflict on the narrow question before us, and with the plain meaning rule being of no avail, we must trace a tortuous legislative history to effect the proper statutory construction.[4]

■ Congress enacted an ancestor of the present § 16–710 in the Act of June 25, 1910, ch. 433, 36 Stat. 864, which authorized the Supreme Court and Police Court of this District (the predecessors of the United States District Court and the Court of General Sessions, respectively) to grant probation except for those convicted of certain felonies. In the Act of June 18, 1953, ch. 128, 67 Stat. 65, Congress authorized the District's Municipal and Juvenile Courts to grant probation under the 1910 law. These two provisions evolved into D.C.Code 1961, §§ 24–102 and 11–757, respectively. *See* D.C.Code 1973, § 16–710, Revision Notes. When Congress revised the judiciary provisions of the D.C.Code in the Act of December 23, 1963, it combined §§ 11–757 and 24–102 into § 16–710. *Id.* In the District of Columbia Court Reform and Criminal Procedure Act of 1970, Congress amended § 16–710 by substituting "Superior Court" for "Court of General Sessions," and enacted D.C.Code 1973, § 11–923(b), giving the Superior Court (after a transitional period) "jurisdiction of any criminal case under any law applicable exclusively to the District of Columbia." Act of July 29, 1970, Pub.L. 91–358, tit. I, §§ 111 and 145(d)(6), 84 Stat. 486, 557. Reading § 11–923(b) together with § 16–706, we conclude that the Superior Court may consider probation in any case with respect to which no specific statutory provision forbids probation. *See, e. g.,* D.C. Code 1973, § 22–3202(d)(2); *United States*

*v. Hilliard,* D.C.App., 366 A.2d 437 (1976). *Cf.* D.C.Code 1973, § 22–2404 (restricting even parole in first-degree murder cases). We next must determine whether the exception set forth in the Federal Probation Act constitutes such a restriction upon the Superior Court's power.

■ Almost 15 years after it gave the District a probation statute, Congress enacted the Federal Probation Act. It was to be applicable to "courts of the United States having original jurisdiction of criminal actions, excepting in the District of Columbia . . . ." Act of March 4, 1925, ch. 521, 43 Stat. 1259. The 1948 revision of the federal criminal code changed the phrase "courts of the United States" to "any court having jurisdiction to try offenses against the United States." The Reviser's Note to § 3651 explains that the language change was intended to make it clear that courts in the territories and possessions also had the power to grant probation. The exception for the District of Columbia remained until the Act of June 20, 1958, Pub.L. 85–463, 72 Stat. 216, made the Federal Probation Act applicable to the United States District Court for the District of Columbia. That law also preserved the applicability of the Act of 1953 (which had extended the probation authority of the Act of 1910) to the Municipal and Juvenile Courts, while repealing the Act of 1910 only as applied to the United States District Court for the District of Columbia. The legislative history reflects that the reason for such a change was to make the probation law uniform in all of the federal District Courts. S.Rep.No.1609, 85th Cong., 2d Sess. (1958), U.S.Code Cong. & Admin. News, 85th Cong., 2d Sess., pp. 2689–91. Congress never intended the Federal Probation Act to apply to the District's local courts—unless it signaled a contrary view in the Court Reform and Criminal Procedure Act of 1970.

---

**4.** In *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974), the Supreme Court stated that "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Cf. District of Columbia v. Smith,* D.C.App., 329 A.2d 128, 130 (1974).

In *Palmore v. United States*, 411 U.S. 389, 408–09, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), *aff'g* D.C.App., 290 A.2d 573 (1972), the Supreme Court recognized the intended purpose of the Court Reorganization Act as that of lightening the caseload of the District's Article III courts by transferring to the local tribunals all those cases which in other jurisdictions would fall to the state courts. *See Swain v. Pressley, supra,* 97 S.Ct. at 1226 n. 4. To read the Court Reorganization Act as impliedly extending the Federal Probation Act to the Superior Court would be inconsistent with the former's basic objective of separating local and purely federal judicial business. *Cf. M. A. P. v. Ryan,* D.C.App., 285 A.2d 310 (1971). The enlargement of the Superior Court's jurisdiction [as compared with that of the former Court of General Sessions, the criminal jurisdiction of which was limited, in general, to offenses punishable by fines or by imprisonment for no more than one year, *see* D.C.Code 1967, § 11–963(a)] does not suggest a different result. When Congress gave the Superior Court plenary jurisdiction over local criminal offenses, D.C.Code 1973, § 11–923(b), it did not provide that the existing limitations on the District Court's power to grant probation would restrict the Superior Court in the exercise of its new authority.

Our holding prevents § 22–3202 of the D.C.Code from becoming a partial tautology. Under subsection (a)(2) thereof, anyone twice convicted of committing a violent crime while armed may be sentenced to life imprisonment. Subsection (d)(2) of that statute, which makes such second offenders ineligible for probation, would be unnecessary if 18 U.S.C. § 3651 applied to the Superior Court. That subsection also was part of the Court Reorganization Act (Pub.L. 91–358, § 205, 84 Stat. 600), indicating that Congress did consider the limits to place upon the Superior Court's power to grant probation. When Congress enacted this provision, it impliedly excluded other restrictions, such as that contained in 18 U.S.C. § 3651. Although the maxim *expressio unius est exclusio alterius* is a rule of construction which is to be applied with caution, it still is entitled to some weight. *Cf. Potomac Passengers Association v. Chesapeake & Ohio Railway Co.,* 154 U.S. App.D.C. 214, 220–21, 475 F.2d 325, 331–32 (1973), *rev'd sub nom. National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

Finally, § 16–710 applies specifically to the Superior Court, while § 3651 includes the general phrase "any court having jurisdiction to try offenses against the United States". It is a well-recognized rule of statutory interpretation that specific statutes normally override general ones. *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976); *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *Bulova Watch Co. v. United States,* 365 U.S. 753, 758, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961). *See also Liberty Mutual Insurance Co. v. Burgess,* D.C.App., 308 A.2d 775, 778 (1973); *Martin v. United States,* D.C.App., 283 A.2d 448, 450–51 (1971). *Cf. Presier v. Rodriquez,* 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The legislative history and the coexistence of other statutes with § 3651 justify adherence to this rule in the instant case. For all of the reasons stated herein, we conclude that the Superior Court's authority to grant probation is not restricted by the provisions of 18 U.S.C. § 3651.

We note that our decision effects a revision of the last sentence of Super.Ct. Cr.R. 32(c)(2). Section 11–946 of the D.C. Code provides that the Superior Court shall operate pursuant to the Federal Rules of Procedure, unless it adopts modifications thereof which are approved by this court. The final sentence of the present Super.Ct. Cr.R. 32(c)(2) is essentially identical to Fed. R.Crim.P. 32(e). The former provides: "For an offense not punishable by death or by life imprisonment, the defendant may be

placed on probation if permitted by law." [5] Such language, of course, was predicated on 18 U.S.C. § 3651, but the rule may not override the statute as we interpret it today.[6] *See, e. g., In re G. C. S.,* D.C.App., 360 A.2d 498, 500 (1976).

 Although we remand for further consideration of appellant's sentence, we intimate no view as to the propriety of probation. The decision to grant or deny probation lies within the trial court's sound discretion. *Burns v. United States,* 287 U.S. 216, 222–23, 53 S.Ct. 154, 77 L.Ed. 266 (1932); *United States v. Baechler,* 509 F.2d 13, 15–16 (4th Cir. 1974), *cert. denied,* 421 U.S. 993, 95 S.Ct. 2000, 44 L.Ed.2d 483 (1975); *United States v. Nu-Triumph, Inc.,* 500 F.2d 594, 596 (9th Cir. 1974); *United States v. Hayward,* 471 F.2d 388, 391 (7th Cir. 1972).[7] *See also Wright v. United States,* D.C.App., 315 A.2d 839, 841 (1974).

*Remanded.*

---

**5.** The rules have been amended since the sentencing hearing in this case. Both the federal rule and the Superior Court rule formerly ended with the phrase "as provided by law" rather than "if permitted by law."

**6.** This case differs from *Campbell v. United States,* D.C.App., 295 A.2d 498 (1972), in that here the rule conflicts with a District of Columbia statute.

**7.** Despite their dealing with 18 U.S.C. § 3651, the cited cases from the Supreme Court and the federal courts of appeals on this point are fully relevant. Both § 16–710 and § 3651 use virtually the same language to state the considerations governing the trial court's decision as to granting probation:

§ 16–710: ". . . if it appears to the satisfaction of the court that the ends of justice and the best interests of the public and of the defendant would be served thereby."

§ 3651: ". . . when [the court is] satisfied that the ends of justice and the best interest of the public as well as of the defendant will be served thereby . . . ."