**Sheila DAVIS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 13146.**

District of Columbia Court of Appeals.

Argued Nov. 20, 1978.

Decided Jan. 29, 1979.

Michael B. Waitzkin, Public Defender Service, Washington, D. C., for appellant.

John H. Korns, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and HARRIS, Associate Judge, and MENCHER, Associate Judge, Superior Court of the District of Columbia.*

MENCHER, Associate Judge:

This case presents the question of whether judges of the Superior Court of the District of Columbia, pursuant to the provisions of D.C.Code 1973, § 16–710, have authority to impose a split sentence, i. e., a sentence on one count which imposes a term of incarceration, suspends only part of it, and places the defendant on probation fol-

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

lowing his release from incarceration in lieu of the suspended balance of the prison term.

## I. BACKGROUND

On August 5, 1977, appellant, Shelia Davis, entered pleas of guilty before the Honorable William C. Pryor to one count of petit larceny, one count of simple assault, and one count of felony violation of the Bail Reform Act.

On September 12, 1977, the court orally sentenced appellant as follows:

> [T]he sentence on the felony will be not less than twenty months, not more than sixty months. The Court will suspend one half and place her on probation after she has served one half of the minimum sentence.
>
> With regards to the two misdemeanors, I might say on probation, the probation will be conditioned that she become involved in a drug treatment program such as Emerge and cooperate fully. With regards to the misdemeanors, it will be thirty days concurrent, each charge, and I will suspend the execution of those sentences.
>
> To repeat, her sentence is not less than twenty months, nor more than sixty on the felony. I will suspend one half and place her on probation on the condition that she participate in the Emerge Program. As to the misdemeanors, it is thirty days concurrent to the felony charge.

The written Judgment and Commitment Orders entered on that date state the sentences on the misdemeanors are to run concurrent with each other and with the sentence on the felony. The Judgment and Commitment Order on the felony shows a sentence of "not less than (20) months & no more than (60) months. This defendant is to serve half of minimum sentence, thereafter other half of minimum is suspended. Probation thereafter for 1 yr."

The court's Judgment and Probation Order of September 19, 1977, reflected an imprisonment period and probation of "not less than (20) months and no more than (60) months. Def to serve half of minimum sent. Thereafter the 2nd. half is suspended. IT IS ORDERED that the 2nd half of minimum sent. be . . . suspended and the defendant be . . . placed on probation . . . for a period of 1 yr."

On September 22, 1977, appellant filed a Motion to Correct Clerical Error. Her counsel represented that he had understood that the sentences on the misdemeanors were suspended and the sentence on the felony was to be ten months followed by probation. However, D.C. Jail records did not indicate that the misdemeanor sentences were suspended. The jail apparently believed that the felony sentence was to be ten-to-sixty-months with appellant being eligible for parole after ten months. Moreover, once paroled she would also begin service of her probationary period of one year under the supervision of the Superior Court. On October 17, the court denied the motion and explained that "there is no clerical error. The sentence imposed was intended and, in fact, one-half of the minimum sentence was suspended."

On December 23, 1977, appellant filed a Motion for Reduction of Sentence which asked for, in part, the imposition of a split sentence of ten months, "with the remainder of her sentence suspended in lieu [*sic*] of one year probation . . . ." (meaning a straight ten-month sentence).[1]

The government responded with a Motion to Correct Illegal Sentence which took the position that the sentence imposed was a ten-to-thirty-month sentence and judges of the D.C. Superior Court do not have the authority to impose such a split sentence under D.C.Code 1973, § 16–710.

On January 25, 1978, the court denied both motions and gave the court's position on split sentences:

> and probation supervision. This argument was abandoned by appellant during oral argument in this court.

---

1. Among other things, appellant argued that there was a potential for incompatible administrative conditions due to the overlap of parole

The sentence imposed was imprisonment of not less than 20 months nor more than 60 months. One-half of the minimum sentence was suspended. [The government indicated that this is an improper split sentence. Traditionally, a split sentence is one which includes imprisonment, a suspension of part of the sentence, followed by probation. Obviously, the present sentence is not of that nature. In this instance, the Court has simply suspended part of the minimum term to be served.] In the view of the Court, such a suspension of sentence is permitted by the District of Columbia Code and, indeed, lies within the *inherent judicial discretion.* Accordingly, it is concluded that the sentence is lawful. [Emphasis and Brackets added.]

On February 2, 1978, the court issued an amended order which deleted the bracketed portion of the January 25 order, *supra.*

## II. THE SENTENCE

There have been various interpretations of the sentence imposed in this case. Appellant views the sentence as twenty to sixty months, all but a fixed term of ten months suspended, with probation to follow. In its Motion to Correct Illegal Sentence, the government contends the sentence is a twenty-to-sixty-month sentence, one-half of the whole sentence suspended (resulting in a ten-to-thirty-month sentence), followed (illegally) by probation. Jail records calculated the sentence as ten to sixty months in custody with parole eligibility after ten months and one year's probation. In its brief to this court, the government states that there is no ambiguity as to the sentence imposed; it is a ten-to-sixty-month sentence. Finally, the trial judge's interpretation of his own sentence some four months after it was imposed appears to be at odds with what was originally stated.

■ The sentence pronounced in open court constitutes the actual judgment of the court. *Valentine v. United States,* D.C. App., 394 A.2d 1374 (1978); *Rich v. United States,* D.C.App., 357 A.2d 421 (1976). When the appellant came before the court for sentencing on September 12, 1977, the court imposed a twenty-to-sixty-month sentence, suspended "one half" and placed the appellant on probation "after she has served one half of the minimum sentence." It is unclear to what the above "one half" refers: it could refer to the minimum only, the maximum only, or both the minimum and the maximum.

■ While the written judgment must conform to the oral judgment of the Court, *Valentine v. United States, supra,* it is well settled that "the sentence in writing should be referred to in order to resolve the ambiguities in the oral pronouncement . . ." *Green v. United States,* 447 F.2d 987, 987 (9th Cir. 1971), *cert. denied,* 405 U.S. 976, 92 S.Ct. 1201, 31 L.Ed.2d 250 (1972). According to the Judgment and Commitment Order, the Judgment and Probation Order, and the Order of January 25, 1978, the court appears to have suspended only the minimum sentence and granted a year probation. Thus, it would appear on the felony that the court imposed a sentence of twenty to sixty months, one-half the minimum suspended, the maximum left intact for backup time, and the one year probation to start after the ten-month minimum sentence is served. However, it is not necessary to finally resolve this issue. It is clear that, under any interpretation, the court's sentence is a split sentence. Holding as we do that a judge of the Superior Court has no authority to impose a split sentence, as that term has been defined, *supra,* the case must be remanded for resentencing.[2]

## III. THE AUTHORITY FOR SUSPENSION OF SENTENCE AND PROBATION IN THE DISTRICT OF COLUMBIA

In 1910, the Congress of the United States passed legislation giving the courts

---

2. At that time the court will also have to resentence defendant on the two misdemeanor counts. With respect to them, the court said at sentencing, "it will be thirty days concurrent, each charge, and I will suspend the execution of those sentences." However, any sentence for failure to appear (the split sentence in this case) must be consecutive to any other sentence of imprisonment. D.C.Code 1973, § 23-1327(d).

of the District of Columbia power to suspend sentences and place defendants on probation. This included both the court with general federal jurisdiction (the Supreme Court, now the U.S. District Court for the District of Columbia) and the local police court (predecessor of the Court of General Sessions). Act of June 25, 1910, ch. 433, 36 Stat. 864 (current version at D.C. Code 1973, § 16–710). At that time, no other federal court in the country was provided by statute with such authority. However, a number of federal judges in other districts had, for a long period of time, been suspending sentences and placing defendants on probation in the belief that they had inherent judicial power to do so. This practice came to an end in 1916 when the Supreme Court of the United States held that federal judges did not have inherent judicial power to permanently suspend sentence; in short, in the absence of a legislative grant of authority, it could not lawfully be done. *Ex parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916). The Supreme Court did take note of the fact that the reason the federal court in the District of Columbia had such power, was because same had been given to it by Congress in the Act of 1910.

In 1925, as a result of *Ex parte United States, supra,* Congress passed the Federal Probation Act, which authorized the suspending of sentences and granting of probation in federal courts outside the District of Columbia. Act of March 4, 1925, ch. 521, 43 Stat. 1259.

On June 18, 1953, the Congress authorized the then Municipal Court for the District of Columbia to suspend sentences without granting probation. Act of June 18, 1953, ch. 128, 67 Stat. 65 (1953). The other changes in the D.C. Act did not go to the substance of the power to suspend and grant probation. See Revision Notes to D.C.Code 1973, § 16–710.[3]

In 1958, Congress amended the Federal Probation Act to make the Act apply to the United States District Court for the District of Columbia and to bring that court out from under the authority of the D.C. Probation Act. Act of June 20, 1958, Pub.L.No. 85–463, 72 Stat. 216. Later in 1958, Congress amended the Federal Act to allow split sentences in the federal courts under certain circumstances. Act of August 23, 1958, Pub.L.No.85–741, 72 Stat. 834.

In 1970, Congress enacted the District of Columbia Court Reform and Criminal Procedure Act. Act of July 29, 1970, Pub.L.No.91–358, 84 Stat. 486. The purpose of the Act, as recognized by the Supreme Court in *Palmore v. United States*, 411 U.S. 389, 408–09, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), *aff'g* D.C.App., 290 A.2d 573 (1972), was to transfer to the Superior Court all those cases which in other jurisdictions would fall to the state courts. *Sanker v. United States*, D.C.App., 374 A.2d 304 (1977). While certain cases were transferred from the federal court to the local court, the authority under the Federal Probation Act was not transferred to the local courts. The District of Columbia Probation Act, and not the Federal Probation Act, is the source of authority allowing the suspending of sentences and the granting of probation by the Superior Court. *Schwasta v. United States*, D.C.App., 392 A.2d 1071 (1978); *Sanker v. United States, supra.*

## IV. CONSTRUCTION OF THE D.C. PROBATION ACT

The District of Columbia Probation Act, presently D.C.Code 1973, § 16–710, provides the Superior Court with the following authority:

> In criminal cases in the Superior Court of the District of Columbia, the court may, upon conviction, suspend the imposition of sentence or impose sentence and suspend the execution thereof, for such time and upon such terms as it deems best, if it appears to the satisfaction of the court that the ends of justice and the best

---

**3.** For a discussion of the similarity between the 1925 D.C. Probation Act and the present version, see note 4, *infra.*

interests of the public and of the defendant would be served thereby. In each case of the imposition of sentence and the suspension of the execution thereof, the court may place the defendant on probation . . . .

We must first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning. *United States v. Young*, D.C.App., 376 A.2d 809 (1977). The words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them. *United States v. Thompson*, D.C.App., 347 A.2d 581 (1975). The statute allows the court, where granting probation, to impose sentence and suspend the *execution* thereof. The ordinary sense and meaning of these words is that the commencement of service of sentence may be held in abeyance. The words do not mean the service of sentence may begin, stop, and perhaps begin again. The "for such time" phrase modifies the length of time of the suspension and not the length of the time in jail to be suspended. The statute contains no reference to suspending a part of the sentence. On its face, therefore, the statute does not appear to allow split sentences. Despite the above, resort to legislative history may still be appropriate. "As the Supreme Court has pointed out, '[W]ords are inexact tools at best and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how "clear the words may appear on 'superficial examination.'" ' *Harrison v. Northern Trust Co.*, 317 U.S. 476, 479, 63 S.Ct. 361, 87 L.Ed. 497 (1943) (citations omitted)." *Citizens Association of Georgetown, et al. v. Zoning Commission of the District of Columbia, et al.*, D.C.App., 392 A.2d 1027 (1978) (en banc). Moreover, "[w]hether or not the words of a statute are clear is not always clear." *Sanker v. United States, supra* at 307, quoting *Barbee v. United States*, 392 F.2d 532, 535 n. 4 (5th Cir.), *cert. denied*, 391 U.S. 935, 88 S.Ct. 1849, 20 L.Ed.2d 855 (1968). "Where the words of a statute are ambiguous, the judiciary may properly use the legislative history to reach a conclusion." *Sanker v. United States, supra* at 307, quoting *United States v. Public Utilities Commission*, 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020 (1953).

It is apparent from the legislative history of the D.C. Probation Act that Congress was not contemplating split sentences when the Act was passed and gave no such authority to either the federal or local court in 1910.

Since the language of the present Act is substantially the same as the 1910 Act with respect to any grant of authority to split a sentence, the legislative policy embodied in the original act carries forward into the present Act and we may construe the original and new versions of the Act together. 2 A *Sutherland Statutory Construction*, § 51.02 at 290 (4th ed. 1973).

The original version of D.C.Code 1973, § 16–710, provided that the court "shall have power . . . after the imposition of sentence . . . but before commitment . . . to place the defendant upon probation" and "*may suspend* the imposition or execution of the sentence, as the case may be, for such time and upon such terms as it may deem best *and place* the defendant in charge of a probation officer." Act of June 25, 1910, ch. 433, 36 Stat. 864 (emphasis added). Thus, if the court suspended the execution of the sentence, it also was to place the defendant in charge of a probation officer ("may suspend and . . . place"). *Ziegler v. District of Columbia*, D.C.Mun.App., 71 A.2d 618 (1950). The language also suggests that the suspension of the execution of sentence and the placing in charge of a probation officer was to occur at the same time; the defendant was to be under the charge of the probation officer and on probation at the very time of suspension—not after any interval of time. Of course, if the defendant must immediately be placed on probation, there could be no split sentence. While the present language of the Act is a bit different, there have been no amendments to change the substance of the above quoted language with respect to the suspension of the execution

of sentence and the placing of one on probation.[4]

■■■ In addition to the original act, we may consider the committee reports as part of the legislative history. *F.T.C. v. Manager, Retail Credit, Miami Branch*, 169 U.S. App.D.C. 271, 515 F.2d 988 (1975); *American Airlines v. C.A.B.*, 125 U.S.App.D.C. 6, 365 F.2d 939 (1966).

The House and Senate reports to this legislation make it clear that the intent of Congress was to allow the courts to suspend the whole sentence, thus granting probation which takes effect immediately. The House Report suggests immediate probation:

> The principle underlying a probation system is found in the laws of many of the States, where it is permissible to suspend sentence, permitting the defendant to go at large, but to be subject to rearrest and punishment if he should violate the order of the court in that respect. [H.R.Rep. No.1016, 61st Cong., 2d Sess. 3 (1910).]

The Senate report explains probation and parole in the following terms:

> Probation, in the sense of this act, is a form of qualified freedom granted to persons who have been convicted of violating the law, after sentence has been imposed and *before commitment* to prison. Parole, in the sense of this act, is a form of qualified freedom granted to persons who have been convicted of violating the law and have entered upon their sentence by going to prison. In both cases the offender is under the regular watch of an officer of the probation commission or board of parole. After fulfilling the requirements of the commission during a period of supervision fixed by that body the offender may be given full freedom.

[S.Rep.No.79, 61st Cong., 2d Sess. 4 (1910) (emphasis added).]

The first sentence of the above passage, read alone, is unclear as to whether the probation or just the granting of probation is to occur before commitment. But, the first sentence, when read with the rest of the passage, shows that probation occurs before commitment.

Later in the same report, it becomes abundantly clear that Congress was neither contemplating nor authorizing split sentences:

> The chief purpose for which this probation and parole system is proposed is to save the character of these citizens. . . In taking his first lawless step, the unfortunate may very easily have only responded to bad external influences, to surroundings which are little more than temptations to vice. Arrest, arraignment, trial, and conviction are in the proven experiences of the courts often punishment enough. If the prisoner can be taken in hand at the moment the sentence is pronounced, it is entirely reasonable to expect that in many cases the shame and degradation of his position may be a lever to turn him permanently away from further crime. *Probation provides the means for taking advantage of this opening. Parole comes into use in those cases where a period of confinement behind bars is thought to be needed in addition to the experience of trial.* [S.Rep. 79, *supra* at 5 (emphasis added).]

Thus, what we refer to today as a split sentence—time in jail on one count, followed by release under supervision—could only be accomplished within the parole system and not by way of probation.

---

4. Indeed, appellant concedes the similarity in statutes in her brief. The 1953 amendment, in response to *Ziegler, supra*, allowed the D.C. courts to suspend a sentence without the granting of probation. Act of June 18, 1953, ch. 128, 67 Stat. 65. While Congress, in amending the law to allow suspension without probation, changed the statute to require that the sentence be imposed and then the execution of the sentence be suspended where probation was to be granted, the purpose of the amendment was only to allow suspension without probation and not in any way to expand the power of the court to permit it to give split sentences. H.R. Rep.No.193, 83d Cong., 1st Sess. 4 (1953). See *Schwasta v. United States, supra*, which explains the requirement that a court, where granting probation, must suspend execution, not imposition, of the sentence.

While the legislative history of the D.C. Probation Act clears up any question about the statute, the close relationship of the D.C. statute and the federal statute make a consideration of the federal scheme useful. Indeed, this court has previously recognized that D.C.Code 1973, § 16–710, is "substantially the same as the federal provision regarding offenses against the United States. See 18 U.S.C. § 3651 (1970)." *Moore v. United States*, D.C.App., 387 A.2d 714, 716 (1978). *See Sanker, supra* at 310 n. 7.

## V. THE FEDERAL PROBATION STATUTE AS AN AID IN CONSTRUING THE D.C. STATUTE

While worth less weight than the legislative history of the District of Columbia Probation Act itself, the legislative history of the Federal Probation Act is a useful extrinsic aid in construing the District of Columbia Act. Both acts were passed by the same legislative body on the same subject within a fifteen-year period. The acts have substantially the same language. The original federal act provided, in part, the following powers of suspension and probation:

[T]he courts of the United States having original jurisdiction of criminal actions, except in the District of Columbia, when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby, shall have power, after conviction or after a plea of guilty or nolo contendere for any crime or offense not punishable by death or life imprisonment, to suspend the imposition or execution of sentence and to place the defendant upon probation for such period and upon such terms and conditions as they may deem best; or the court may impose a fine and may also place the defendant on probation in the manner aforesaid. [Act of March 4, 1925, ch. 521, 43 Stat. 1259 (current version at 18 U.S.C. § 3651 (1976)).]

As discussed above, the "for such time" phrase in the District of Columbia Probation Act affects the length of time of the suspension of sentence and has nothing to do with split sentencing. The fact that the placement of the "for such time" phrase is different in the federal act than in the District of Columbia Act is insignificant. While the statute's language was changed, the statute's substance, as far as split sentencing is concerned, was not changed until the 1958 amendment specifically allowing split sentences.

Split sentences were not contemplated by the Congress when it passed the Federal Probation Act in 1925. The House Committee on the Judiciary report stated that the "result of long experience with the probation system shows that it is far easier to reclaim an unhardened early offender without commitment to a prison than after it." H.R.Rep.No.1377, 68th Cong., 2d Sess. 4 (1925).

In *United States v. Murray*, 275 U.S. 347, 357–58, 48 S.Ct. 146, 149, 72 L.Ed. 309 (1928), the Supreme Court, in discussing the concept of probation, stated:

What was lacking in these provisions was an amelioration of the sentence by delaying actual execution or providing a suspension so that the stigma might be withheld, and an opportunity for reform and repentance granted before actual imprisonment should stain the life of the convict. This amelioration had been largely furnished by a power which trial courts, many of them, had exercised to suspend sentences. In some sections of the country it had been practiced for three-quarters of a century. By the decision in *Ex Parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129, . . . ., that remedy was denied. In that case, however, this court suggested legislation to permit probation. For eight years thereafter Congress was petitioned to enact it, and finally the Probation Act was passed.

The great desideratum was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment. Experi-

ence had shown that there was a real locus poenitentiae between the conviction and certainty of punishment, on the one hand, and the actual imprisonment and public disgrace of incarceration and evil association, on the other. If the case was a proper one, great good could be done in stopping punishment by putting the new criminal on probation. *The avoidance of imprisonment at time of sentence* was therefore the period to which the advocates of a Probation Act always directed their urgency. Probation was not sought to shorten the term. [Emphasis added; citation partially omitted.]

While that case held that probation could not be granted once service of the sentence had commenced, the case is helpful in discerning what the philosophy was in connection with the granting or withholding of probation and to further show that "probation" had a special and precise meaning: probation avoided imprisonment. In short, this was not a philosophy into which could be read a concept of split sentencing. This would have to wait an additional thirty years to be legally brought about.

Congress believed that courts could not split sentences under the 1925 Federal Probation Act. In 1958, the federal probation statute was specifically amended to allow split sentences. The House of Representatives Judiciary Committee's report gave the following account of the then existing law:

Under present law when a person is convicted on more than one count of an indictment, the court may sentence him to a short period of imprisonment on one count, and place him on probation for a longer period on another count. Under one count indictments a judge may not do this. [H.R.Rep.No.1658, 85th Cong., 2d Sess. 1 (1958).]

5. Appellant argues that the District of Columbia statute was not a concern of Congress in amending the Federal Probation Act in 1958 and that the former was not even mentioned in the legislative history. Such is not the case. It was mentioned. The legislative history suggests a Congressional concern as to whether the United States District Court for the District

The Senate Committee on the Judiciary, in its report, stated that, if a court wanted to place a convicted defendant on probation, "[i]t is clear that in such a case the court, under the existing law, must suspend the whole sentence and not just a part of it." S.Rep.No.2135, 85th Cong., 2d Sess. 2, *reprinted in* [1958] U.S.Code Cong. & Admin. News, pp. 3841, 3841.

The Judicial Conference of the United States supported the legislation and distinguished judges testified on the need for the amendment. In its written submission to the Congress, the Judicial Conference stated that numerous judges believed that a term of imprisonment preceding probation may be advisable, but when "the conviction is on a single-court indictment this course is not open." S.Rep.No.2135, *supra* at 3, *reprinted in* [1958] U.S.Code Cong. & Admin. News, pp. 3841, 3843.

In hearings held by the House Judiciary Committee, Chief Judge John T. Parker of the United States Court of Appeals for the Fourth Circuit testified that, while the Supreme Court has upheld a court's authority to sentence a defendant to imprisonment on one count and place him on probation on another count, when "the conviction is on a one-count indictment this combination sentence is not possible." *Appeals From Interlocutory Order and Confinement in Jail-type Institutions: Hearings on H.R.7260 Before Subcomm. No. 3 of the House Comm. on the Judiciary*, 85th Cong., 2d Sess. 2 (1958), U.S.Code Cong. & Admin. News 1958, p. 3841.

Thus, the extensive legislative history to the Federal Probation Act shows that Congress never intended to allow split sentences when it passed the 1925 Federal Probation Act and that the 1958 amendment was necessary to give federal judges, including those sitting in Washington, D.C., such authority.[5]

of Columbia would also have split sentencing authority.

The original split sentencing amendment to the federal act contained an exception for the United States District Court for the District of Columbia for the following reasons:

Mr. Willis. Why is the District of Columbia excepted?

Appellant, relying on *Basile v. United States*, D.C.Mun.App., 38 A.2d 620 (1944), argues that the fact that Congress amends a federal act to give more power to the federal courts does not indicate a lack of such power under a D.C. act. We agree with this proposition. This, however, is not a reason for ignoring the legislative history of the Federal Probation Act in our construction of the D.C. Act; it would be a reason for giving less weight to this legislative history if split sentencing, like the power to order restitution discussed in *Basile*, were well grounded in the D.C. Act. But split sentencing is not grounded at all, let alone wel', in the D.C. Act. The distinction between the *Basile* case and the case at hand is that the power to order restitution can be found in the broader powers of the D.C. Act, namely the power to set terms and conditions for probation;[6] a split sentence, with its attendant jail sentence, is not a term or condition of probation and the power to order split sentences cannot be found in the D.C. Act.

## VI. THE STATE CASES

■ Neither appellant nor appellee, either in their pleadings or at oral argument, brought to the court's attention any state court decisions dealing with the propriety of split sentencing. However, this issue has been addressed by numerous state courts.

.     .     .     .     .

Judge Maris. A local statute in the District of Columbia is the reason why these provisions do not apply at the present time.

.     .     .     .     .

Mr. Sharp. . . . The reason for that exception is that up to the present the District of Columbia is excepted from the Federal Probation statute. They have their own Probation Act, which governs the District of Columbia. This committee reported out a bill last year bringing the District of Columbia [referring to the Federal court] under the Federal Probation Act, and, of course, if that should pass, that would make this an exception, so this would probably have to be corrected too; but as it stands now, they are excepted from our act. [*Appeals From Interlocutory Order and Confinement in Jail-type Institutions: Hearings on H.R.7260 Before Subcomm. No. 3 of the House Comm. on the Judiciary*, 85th Cong., 2d Sess. 7 (1958) (Answers of Judge Maris and Mr. Sharp to a

Moreover, it is clear that when state courts have done so, the great majority of them have held that a split sentence may not be utilized by the trial judge without express legislative authority. *State v. Van Meter*, 7 Ariz.App. 422, 440 P.2d 58 (1968); *People v. Ledford*, 173 Colo. 194, 477 P.2d 374 (1970); *Franklin v. State*, 87 Idaho 291, 392 P.2d 552 (1964); *People v. Woods*, 13 Ill.App.3d 860, 301 N.E.2d 593 (1973); *State v. Harris*, 251 N.W.2d 483 (Iowa 1977); *People v. Robinson*, 253 Mich. 507, 235 N.W. 236 (1931); *State ex rel. St. Louis County v. Stussie*, 556 S.W.2d 186 (Mo.1977); *State v. Sanchez*, 150 N.J.Super. 424, 375 A.2d 1228 (Super.Ct. App.Div.1977); *State v. Marshall*, 247 N.W.2d 484 (S.D.1976). *See Dorfman v. State*, 351 So.2d 954 (Fla.1977). *Cf. State v. Shiffbauer*, 197 Neb. 805, 251 N.W.2d 359 (1977) (notes legislative change). *Contra, State v. Kuczynski*, Ind.App., 367 N.E.2d 8 (Ind.App.1977); *State ex rel. Woodbury v. District Court of Thirteenth Judicial District*, 159 Mont. 128, 495 P.2d 1119 (1972); *Moore v. Patterson*, 203 S.C. 90, 26 S.E.2d 319 (1943). For example, the Idaho Supreme Court in concluding that its trial courts were without authority to impose a jail sentence as a condition of probation looked to Michigan and stated that:

On appeal, the Supreme Court of Michigan, in holding that the trial court had erred in requiring jail servitude as a condition of probation, said:

question by Hon. Edwin E. Willis, Chairman of the Subcommittee).]

After the hearings on the split sentencing bill but before its consideration, Congress passed the legislation bringing the United States District Court for the District of Columbia under the Federal Probation Act. Because of this legislation, the bill to amend said Act to allow split sentences was amended to delete the exception for the District of Columbia. In bringing the United States District Court for the District of Columbia under the Federal Probation Act and giving all the federal courts split sentencing authority, Congress was aware of the D.C. Act, yet, no one suggested that the federal court in the District of Columbia already had split sentencing authority under the District of Columbia Probation Act.

**6.** *See generally Moore v. United States, supra* (examples of terms and conditions of probation).

"the court was wrong in requiring the defendant to serve sixty days in jail as a condition of probation. Probation is a substitute for imprisonment. It is a conditional suspension of sentence. It is applied on the theory that, if allowed to retain his liberty and be at large among the people under certain regulations and supervision, the convicted person will not engage in a criminal course of conduct. The Court entered an order placing the defendant on probation. Imprisonment cannot be imposed until the probation is revoked or terminated." 235 N.W. at 237.

A few months after that decision, during 1931, the Michigan legislature amended the state probation statute to provide for imprisonment in the county jail as a condition of probation. [*Franklin v. State, supra,* 392 P.2d at 559.]

The Supreme Court of Colorado construed its own statute which contained language nearly identical to that contained in the District of Columbia Probation Act. The Colorado statute provided, in pertinent part:

> When it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, will be best served thereby, *the court shall have the power to suspend the imposition or execution of sentence for such period and upon such terms and conditions in conformity with this article* as it may deem best. [C.R.S. 1963, 39–16–6 (emphasis added).]

In remanding the case to the trial court for resentencing, the Supreme Court of Colorado held that the trial court had no authority to impose a period of jail confinement as a condition of probation. In short, it held the trial court lacked statutory authority and concluded its opinion as follows:

> Certainly, the policy of granting probation with a period of confinement as a condition may be argued as being most beneficial under certain circumstances. However, this policy and the limits which should be placed upon it are matters properly for the legislature to consider

and not for this court to attempt to read into the present statute. [*People v. Ledford, supra,* 477 P.2d at 376.]

While the state court opinions are, of course, not binding on this court, they are persuasive and confirm our view of what should be the proper resolution of the issue under consideration.

■ One final point needs comment. Appellant argues that the practice of split sentencing is of long standing in the Superior Court of the District of Columbia. The short answer to this is that such does not make it lawful. *Ziegler v. District of Columbia, supra.* Indeed, this very same argument was made in the Supreme Court of the United States in 1916 to justify the granting of probation per se by federal judges. It was rejected. *Ex Parte United States, supra.*

In all fairness to the able trial judge, it should be noted that the problem surrounding split sentencing by judges of the Superior Court apparently was not considered a problem until after May of 1977 when *Sanker v. United States, supra,* was handed down. Moreover, this court is aware that the practice of split sentencing on a one count case has, in the past, been utilized by judges of the trial court because it permitted them to structure what, in their sound judgment, was an appropriate sentence. Indeed, we need only focus on Chief Judge Parker's testimony before Congress in 1958 to recognize that a split sentence in an appropriate one count case may be beneficial, not only to the defendant, but to the public as well. However, if such is to be authorized, recourse must be had to the legislature. *Accord, People v. Ledford, supra.*

## VII. CONCLUSION

Split sentences on a one count case are not authorized under D.C.Code 1973, § 16–710, nor do judges in the Superior Court have inherent judicial power to impose them. *Ex Parte United States, supra.*

Since the sentence in this case was a split sentence, and since "a sentencing court has

no authority to suspend a sentence or to impose a sentence of a nature or in a manner not authorized by statute," *Schwasta v. United States, supra* at 1077, it is ordered that this case be remanded for resentencing.

*So Ordered.*

NEWMAN, Chief Judge, dissenting:

I am unable to concur in the majority's analysis or conclusion and thus I dissent.

I agree that the source of the Superior Court's authority to impose split sentences, if it exists, is to be found in D.C.Code 1973, § 16–710, for it is now beyond dispute that the Federal Probation Act, 18 U.S.C. § 3651 (1976), is inapposite to cases tried in the Superior Court. *Schwasta v. United States,* D.C.App., 392 A.2d 1071, 1077 (1978); *Sanker v. United States,* D.C.App., 374 A.2d 304, 306–09 (1977). Having taken this first step, however, we are not compelled by *Schwasta* or *Sanker* to reach the result the majority reaches here. As a member of the division that decided *Schwasta,* I was convinced that § 16–710 clearly and unambiguously foreclosed the type of sentencing activity that the trial court attempted there—probation after the suspension of the *imposition* of sentence. *Schwasta v. United States, supra* at 1077. I am of the opinion that § 16–710 not only does not foreclose split sentences but can be read fairly, clearly, and unambiguously as an authorization for the Superior Court to impose split sentences.

Section 16–710 states in pertinent part that the Superior Court

> may . . . suspend the imposition of sentence or impose sentence and suspend the execution thereof, for such time and upon such terms as it deems best, if it appears to the satisfaction of the court that the ends of justice and the best interests of the public and of the defendant would be served thereby. In each case of the imposition of sentence and the suspension of the execution thereof, the court may place the defendant on probation under the control and supervision of a probation officer.

Several observations are germane to this passage. First, it enables the trial court to utilize a greater degree of discretion in sentencing by permitting it, in the exercise of its judgment, to deviate from the mandatory sentence provision of the criminal statutes. The power to deviate from the sentencing provisions of statutes and utilize probation as an alternative sentence is not inherent and must be granted by the legislature. *Ex Parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed.2d 129 (1916).

Second, the statute directs that the trial court's discretion in sentencing shall be directed toward "the ends of justice" and limited by "the best interests of the public and the defendant." Thus, although the statute confers upon the Superior Court a discretion in sentencing that it otherwise would not enjoy, it imposes a standard by which the power delegated is to be exercised. This broad capacity to shape the penalty exacted from a defendant upon conviction of a crime is entirely in keeping with the notion that a trial judge exercises wholly independent judgment in sentencing. *Franklin v. United States,* D.C.App., 392 A.2d 516, 520 (1978).

Third, the statute imposes no other restrictions upon the trial court's exercise of discretion to use probation in sentencing— as to either the occasions upon which probation will be employed or the part it will play in the sentencing program. There appears to me to be no merit in the majority's suggestion that *Ziegler v. District of Columbia,* D.C.Mun.App., 71 A.2d 618, 619 (1950), requires that probation be employed as an alternative to incarceration rather than as an addition to it. The trial court in *Ziegler* attempted to suspend altogether the penalty imposed by the criminal statute at a time when the D.C. probation statute did not permit suspension. *Id. See also Ex Parte United States, supra* (cited in *Ziegler*). That case was on all fours with *Schwasta v. United States, supra.* The court in *Ziegler* held that the statute clearly and unambiguously foreclosed the sentence the trial court had imposed just as this court held in *Schwasta.*

The words of Justice Holmes bear repeating: "We do not inquire what the legislature meant; we ask only what the statute means." O. W. Holmes, Collected Legal Papers 207 (1920). Section 16–710 enables the trial court to exercise broad discretion that would not be possible under the sentencing provisions of the criminal statutes. It states a standard by which the trial court exercises that discretion but it does not foreclose the alternative of split sentencing by any but a tortured reading. Even if I were to concede that the statute is sufficiently ambiguous to justify an amplification of the enacted text by a reference to the legislative history, I find nothing therein upon which to rest the majority's conclusion. Their reading of the legislative history shows at best that Congress did not consider the possibility of split sentencing. It surpasses law and logic to assume that the Congress intended to proscribe what it did not consider. I cannot credit such a conclusion. The words of the statute speak more directly and more eloquently than do the subsequent suppositions of a court.

In conclusion, I suggest that the effect of both the decision in this case and that of *Schwasta*, with the limits they place on the sentencing alternatives of trial judges, are appropriate subject matter for legislative correction by explicit grant of such authority.