Maximilian MORROF, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL ACCOMMODATIONS COMMISSION, Respondent.

Joseph Rotwein, Intervenor.

No. 81–914.

District of Columbia Court of Appeals.

Argued May 25, 1982.

Decided Aug. 26, 1982.

---

Stephen O. Hessler, Washington, D.C., for petitioner.

Richard B. Nettler, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the memorandum, for respondent.

John R. Risher, Washington, D.C., for intervenor.

Before MACK and PRYOR, Associate Judges and PAIR, Associate Judge, Retired.

MACK, Associate Judge:

Petitioner appeals from the decision of the District of Columbia Rental Accommodations Commission, affirming a decision of the Rental Accommodations Office which dismissed, with prejudice, petitioner's complaint against his landlord (appearing here as intervenor). Petitioner alleges that the Commission erred in concluding that the intervenor had not collected, or attempted to collect, rents in excess of the applicable rent ceiling. He argues specifically that the Commission sanctioned erroneous ceiling calculations as well as the discontinuance of optional services provided by the intervenor without requiring a corresponding reduction in rent. We affirm.

The record reveals that petitioner moved into an apartment unit within a complex on Massachusetts Avenue on September 21, 1974. The unit was rented on a "take it or leave it" basis, furnished, with weekly maid and linen service. Petitioner paid the first month's rent of $285 (plus a security deposit) and indicated his intention to occupy the unit for three months. He, in fact, occupied the unit continuously, paying $285 per month, until March 1979.

At the time the complex was initially registered in 1974, the apartment subsequently rented by petitioner was listed as exempt from control as a transient unit. See Rental Control Regulation No. 74–20, 21 D.C. Reg. 289 (1974) § 3(g)(2). Therefore, no base rent was listed although there was a reference in the registration statement to "optional service" and "mandatory rent." On February 2, 1976, intervenor registered the complex in accord with the new rent control law, D.C. Rental Accommodations Act of 1975, D.C. Law 1–33, codified as D.C. Code 1978 Supp., § 45–1631 et seq., which modified the exemption provisions of Regulation 74–20 (see id. § 45–1641(e)). The intervenor incorrectly characterized the subject unit as exempt (as borne out subsequently by Granite State Limited Partnership v. District of Columbia Rental Accommodations Commission, D.C. App., 403 A.2d 1157 (1979)) but he did not increase the rent for the unit. In May 1978, intervenor filed a new registration statement under yet another new rent control law, the Rental Housing Act of 1977, D.C. Law 2–54 codified as D.C. Code 1980 Supp., § 45–1681 et seq. This time the registration statement correctly stated that petitioner's unit was covered by rent control. It listed the base rent as $170 and the ceiling as $220. On January 25, 1979, intervenor notified petitioner that the optional

services being provided (*i.e.,* furnishings, linen and maid service) were being discontinued and that the monthly rent thereafter would be $242. Petitioner's complaint to the Rental Accommodations Office followed. A hearing examiner rejected his contentions and the Commission affirmed.[1]

■ The Commission properly affirmed the decision of the Rental Accommodations Office. The Examiner found (and the Commission agreed) that the monthly charge of $285 was not in excess of the maximum allowable at the time of occupancy or thereafter. On the basis of uncontroverted evidence she found that $170 of the $285 represented rent; the value of what she found to be optional services at the commencement of petitioner's occupancy was $115, based upon evidence that a year prior to such occupancy the intervenor had charged a monthly rate of $80 for furniture and $35 for maid and linen service.[2] The Examiner reasoned (in accord with the comparison of a "substantially identical accommodation" standard of section 5(j) of Regulation 74–20)[3] that the rent ceiling for the unit in August 1974 was $171.29; she found that the evidence showed beyond doubt that intervenor was authorized to charge at least $170 per month for rent at the commencement of petitioner's occupancy. She concluded further that intervenor was authorized to further increase the rent (noting that as of October 31, 1977, the base rent was $221).[4]

We find these conclusions to be supported by the evidence and in accord with law.

Petitioner concedes, in this court, that the rent ceiling for his apartment must be computed by the comparability provisions of section 5(j) of Regulation 74–20. His argu-

ment that comparable units were not used in the calculation for 1974 is not convincing, most particularly at this juncture. The intervenor's evidence identified a comparable unit (at a ceiling of $171.29) and the Examiner properly credited that evidence in establishing a base rent of $170. Moreover, *if* the gist of petitioner's alternative argument is that the requested increase in 1979 (to $242) was improperly calculated upon a base reflecting pre-1978 increases, we find him in no better position. It is true that by our calculation the rent ceiling in January 1979 was $243.50 and the base rent $221.36. *See* notes 3 & 4 *supra.* Moreover, all parties agree that the unit in question was not treated as controlled until 1978 when a rent ceiling was established. But the circumstances here are such that the rent, in fact, was controlled. Petitioner was charged $170 per month from 1974 to 1979. Arguably, the intervenor could have implemented rent increases when he registered the accommodation in 1976 under the 1975 Rental Accommodations Act (*see Apartment and Office Building Association of Washington v. Moore,* D.C.App., 359 A.2d 140 (1976) but he did not do so. It is significant that through 1978 the rent for this unit remained at $170 despite the fact that the rent for comparable transient units was higher. It is likewise significant that intervenor registered the unit as controlled in May 1978 before our decision putting the matter of transient occupancy to rest in June 1979. *See Granite State Limited Partnership v. District of Columbia Rental Accommodations Commission, supra.* The intervenor is not in the posture of the petitioner-landlord in *Granite II* (*Granite State Limited Partnership v. District of Columbia*

1. A first decision of the Examiner was considered by the Commission and the cause was remanded for a de novo hearing and additional findings which form the basis for this appeal.

2. The Examiner further noted that at the time of her decision petitioner was still in possession of the furniture.

3. Section 5(j) of D.C. Reg. 74–20 provided that the rent ceiling for a unit (vacant after the effective date of the regulation—August 6, 1974) shall be "the highest rent ceiling applica-

ble to any substantially identical accommodation within the same rental facility."

4. The 1977 Rental Housing Act defines "base rent" as rent charged or *chargeable* on October 31, 1977 which is to be the sum of rent charged on February 1, 1973 and all rent increases authorized by prior laws or decisions. *See* § 45–1681(a). It is not disputed that the base rent may exceed the amount of rent actually paid.

*Rental Accommodations Commission,* D.C. App., 422 A.2d 1278 (1980)), who admittedly implemented rent increases while challenging findings of non-exempt status. There is simply no evidence here that the rent in question was higher than the law permitted for any applicable period.

■ Finally we note that there is sufficient evidence to support the Commission's determination that furnishings, maid and linen service were provided as optional services.[5] We are bound by that determination. *Spevak v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 407 A.2d 549, 554 (1979).

*Affirmed.*

---

**5.** "Optional services" is defined by D.C. Reg. 74–20 § 3(k) as "any facilities or equipment made available by a landlord to a tenant at the option of the tenant and in exchange for payment of a rental fee over and above the rental fee for occupancy of the accommodation."