**CHARLES E. SMITH MANAGEMENT, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

**No. 83–646.**

District of Columbia Court of Appeals.

Argued Jan. 22, 1985.

Decided May 24, 1985.

---

Lawrence H. Fischer, Washington, D.C., with whom Ronald L. Ogens, Washington, D.C., was on brief, for petitioner.

Karen J. Krueger, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for respondent.

Before NEWMAN, FERREN and TERRY, Associate Judges.

NEWMAN, Associate Judge:

Charles E. Smith Management, Inc., (Smith) seeks review of a decision of the Rental Housing Commission (Commission), and a decision and order of the Rent Administrator (Administrator). The Administrator found that Smith had not lawfully adjusted the rent ceiling on a vacated unit as of April 7, 1981, as provided by D.C. Code § 45–1694 (Supp.1980);[1] disallowed a purported vacancy adjustment; and ordered a refund of rental overcharges. We affirm.

The tenant commenced occupancy of the unit in question (# 320) on April 7, 1981, under a written lease setting the monthly rent at $361.00. Approximately six months later, Smith notified the tenant that it intended to take a general 10% rent ceiling adjustment pursuant to D.C.Code § 45–1517(b) (1981)[2], and that as a consequence,

---

1. This section provides that, when a unit is lawfully vacated, the rent ceiling may "be adjusted to either (A) the rent ceiling which would otherwise be applicable to such rental unit ... plus three percent (3%) thereof or (B) the rent ceiling of a substantially identical unit."

Since this occupancy and subsequent rent overcharge began on April 7, 1981, review of this appeal is governed by the Rental Housing Act of 1977 (which was extended by the Act of 1980 and did not expire until April 30, 1981), and the concurrent Rental Accommodations Commission Rules, 28 D.C.Reg. 1144 (1981).

2. In pertinent part, this section provides that the rent ceiling may be adjusted annually in the amount of a price index but not to exceed 10%.

her rent would become $397.00 per month, effective November 1, 1981.

The tenant examined the files of the Rental Accommodations Office (RAO) with respect to her unit. She found that the rent ceiling registered in those files was $316.00 ($45.00 less than the lease rent), and that the registered comparable unit was # 105. There was nothing on file indicating that Smith had taken a vacancy rent ceiling adjustment between the time that it had been vacated by the prior tenant and her occupancy thereof. She concluded that even assuming a vacancy increase of 3% as provided by D.C.Code § 45–1694 (Supp. 1980), *see* note 1, *supra,* her lease rent constituted an unlawful rent in excess of the rent ceiling, and filed a complaint.

At the hearing on the complaint, Smith contended that it was entitled to a rent ceiling adjustment to the ceiling of the "highest comparable unit"; Smith argued that there were approximately 15 comparable units, and it was prepared to use unit # 920 as the comparable one.[3] Smith conceded that it had never registered # 920 as a comparable unit, thereby adjusting the rent ceiling on # 320 to that of # 920. Smith contended that it was not required to amend the registration form to substitute # 920 for # 105 until 30 days after its failure to do so was brought to its attention. Smith's agent testified that # 920, which had a rent ceiling of $386.00 per month in April 1980, was a comparable unit to # 320, the unit in dispute.[4]

The Hearing Examiner issued his decision and order on April 23, 1982. He held that the record was closed at the conclusion of the hearing on February 11, 1982. He found that Smith had taken neither of the vacancy adjustments provided for by § 45–

1694 at a time when # 320 was vacant. He thereby rejected Smith's contention that it could, in essence, do so *nunc pro tunc.* He ruled that Smith had overcharged the tenant a total of $477.00, and ordered that sum refunded.

The Commission affirmed the Hearing Examiner. It held that the Hearing Examiner correctly refused to allow Smith to substitute # 920 for # 105 as a comparable unit, *nunc pro tunc,* for to do so would create a disincentive for landlords amending registration statements to provide "accurate and reliable information by landlords." It also rejected Smith's contention that if the "comparable unit" adjustment was denied, it was entitled to a percentage increase; the Commission held, "[o]nce an election is made to take [a] comparable increase instead of a percentage increase, the landlord is bound by his decision."

In this petition for review, Smith argues that the Commission's ruling contravenes our decision in *Morrof v. District of Columbia Rental Accommodations Commission,* 449 A.2d 1089 (D.C.1982). It contends that *Morrof* is authority for the proposition that it is entitled to adjustments in rent ceiling upon vacancies and can implement same without a new filing with RAO. We disagree. In *Morrof,* the landlord had filed with the RAO the appropriate registration form with respect to each increase of the rent ceiling. *Morrof* is inapposite here.

Since the Commission is charged with the administration of the rent control statutes, we owe deference to its interpretation thereof (as well as to its interpretation of regulations they promulgate), unless the interpretations are unreasonable. *1880 Columbia Road v. District of Colum-*

The rent ceiling is the maximum amount of rent which a landlord may lawfully charge for a given unit. D.C.Code § 46–1681(u) (Supp.1980).

**3.** At the hearing, Smith conceded that the registered comparable unit, # 105, was not a comparable one within the meaning of D.C.Code § 45–1694(b) (Supp.1980).

**4.** On March 5, 1982, 22 days after the hearing, Smith filed what it called an amended registration statement. This form stated that the rent ceiling on unit # 320 had been increased from $316.00 to $361.00 in April 1980, based on the rent ceiling of $386.00 on a comparable unit, # 920.

It was not disputed at the hearing that # 920 was, in fact, a comparable unit to # 320.

*bia Rental Accommodations Commission*, 400 A.2d 333 (D.C.1979); *see also Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). We find nothing unreasonable in the interpretations made by the Commission.

The Commission is charged with the formidable task of overseeing many aspects of the control of rental housing in the District of Columbia in an attempt to ensure that decent, affordable housing is available for the various sectors of the population, while at the same time landlords are allowed a fair rate of return on their investments. *See* Rental Housing Act of 1977 (Rent Stabilization Program), D.C.Code § 45–1681 to –1699.27 (Supp.1980). In view of the massive amount of administrative work these responsibilities entail, the rent control statutes create a number of registration measures for landlords and accompanying tenant monitoring provisions. *See, e.g.*, D.C. Code §§ 45–1686, –1687(e), –1699.26 (Supp. 1980). Reporting requirements play an essential role in ensuring compliance with the rent laws. The failure to timely file reports and amended registration statements can seriously impede, if not prevent, appropriate enforcement action, by depriving the Administrator of information which is needed to determine if a violation has occurred. *Morrof v. District of Columbia Rental Accommodations Commission, supra.* In addition, it can lead to unnecessary administrative litigation and proceedings, due to tenant challenges based on inadequate files.

■ In construing the statutes and applicable regulations, the Commission could reasonably conclude that a landlord cannot escape application of the Commission's rules by claiming that a noncomparable unit listed in its filing was a clerical error, particularly when the landlord failed to file the requisite annual amendments to that statement until March 1982—approximately three weeks after the decision of the administrator; approximately one year after the law required, and four months after the landlord was put on notice by the tenant's challenge.

■ Smith's challenge to the Commission's rejection of its claim in the alternative for a percent adjustment is likewise flawed. The Commission could reasonably hold that Smith's failure to lawfully implement a rent ceiling increase, based on the highest comparable at the time of the vacancy, precludes its later selection of the other formula. Section 45–1694 provides that *"when* a tenant vacates a rental unit ... the rent ceiling may, at the election of the landlord, be adjusted to *either* (A) the rent ceiling which would otherwise be applicable to such rental unit ... plus three percent (3%) thereof, *or* (B) [the highest comparable]" (emphasis supplied). The use of the disjunctive conjunction "or", to join the alternatives, indicates that they are mutually exclusive. Therefore, only one may be selected. The Commission did not err in ruling that the selection must be made *at the time of vacancy.*

■ The annual filing requirement is for the administrative convenience of the Commission and landlords; as such, the Commission can validly require strict compliance with its provisions. It could reasonably hold that to construe the statute as petitioner urges, allowing amendments at any time, removes any effective enforcement sanction behind the requirement and eviscerates the meaning and force of the statutes and regulations. *See Tenants Council of Tiber Island-Carrollsburg Square v. District of Columbia Rental Accommodations Commission*, 426 A.2d 868 (D.C.1981).

*Affirmed.*[5]

---

5. Given our disposition of these issues, we need not consider the Commission's request that, if we disagree with it on these issues, we remand the record to it to determine the impact of and appropriate remedy for Smith's alleged violation of D.C.Code § 45–1686(e), construed by the Commission in § 205(b)(5) of the then-current regulations, 28 D.C.Reg. 1154 (1981).

We vacate our prior order staying the refund.