In re C.L.M., Appellant.

No. 98–FS–349.

District of Columbia Court of Appeals.

Argued Feb. 24, 2000.
Decided Feb. 15, 2001.

this regard.

Julie Brain, Public Defender Service, with whom James Klein and Jaclyn Frankfurt, Public Defender Service, were on the brief, for appellant.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Robert R. Rigsby, Interim Corporation Counsel, at the time the brief was filed, and Rosalyn Calbert Groce, Director, Policy and Appeals Branch, were on the brief, for the District of Columbia, appellee.

Before SCHWELB and WASHINGTON, Associate Judges, and BELSON, Senior Judge.

WASHINGTON, Associate Judge:

Appellant C.L.M. entered a plea of guilty to one count of simple assault, in violation of D.C.Code § 22–504(a) (1996). The issue on appeal is whether a 1995 order committing C.L.M. to the custody of the Department of Human Services ("DHS") for a period of no more than two years was a legal disposition, so that a subsequent order vacating the initial commitment and committing her for a longer period *nunc pro tunc* to the date of the original order violated her rights under the Double Jeopardy Clause. Because we conclude that the trial court lacked jurisdiction to issue a subsequent commitment order, we reverse without reaching the double jeopardy issue.

### I.

On September 27, 1995, C.L.M. entered a plea of guilty to one count of simple assault. A disposition hearing was held on December 29, 1995, and on that date the trial court entered an oral and written commitment order stating that C.L.M. was to remain committed to the custody of DHS for an indeterminate period of time not exceeding two years pursuant to D.C.Code § 16–2320(c)(2) (1997). The Assistant Corporation Counsel, who was present at the disposition hearing, neither objected to the order nor expressed any reservations regarding its propriety.

On November 6, 1997, DHS filed a progress report with the trial court requesting that C.L.M.'s commitment be extended for an additional one-year period. C.L.M. filed a written opposition to DHS' request, pointing out that the trial court had no authority to extend the commitment because the statutory provision allowing for such extensions had been removed by a 1993 amendment to D.C.Code § 16–2322.[1]

---

1. The District does not dispute that there are no longer any provisions for such one-year extensions.

The trial court conducted a hearing on February 6, 1998, on DHS' request to extend the commitment. The trial court assumed that C.L.M.'s argument regarding its lack of authority to order an extension was correct, but characterized the initial commitment order as an administrative error on the part of the trial court. The judge stated that it was never his intention to limit the commitment to two years. The trial court then vacated the order and entered a new disposition order, committing C.L.M. to DHS until her twenty-first birthday, *nunc pro tunc* to the date of the original order. A timely notice of appeal was filed on March 9, 1998.

## II.

■ C.L.M. argues that the trial court order vacating its original commitment order and imposing another longer term of commitment violated her rights under the Double Jeopardy Clause. The District responds that the trial court's earlier commitment order was issued in error and that it could therefore be vacated and a new commitment order issued. According to the District, a 1993 amendment to D.C.Code § 16–2322 increased the maximum term of commitment from a period of two years to an indeterminate period ending upon a youth's twenty-first birthday, and thus effectively eliminated the court's authority to set a term of commitment for less than the statutory term of "until a child's twenty-first birthday." C.L.M. contends that the District's interpretation of D.C.Code § 16–2322(a)(4), as mandating that every commitment must extend until a child's twenty-first birthday, is erroneous and that the trial court's original disposition order specifying a commitment period of no more than two years was fully in accordance with applicable law.

■ D.C.Code § 16–2322(a)(4), as amended, specifies that a commitment is to be "indeterminate" and for a period "not to exceed" the youth's twenty-first birthday. In construing the plain language of a statute, this court must give the words chosen by the legislature the "ordinary sense and meaning traditionally attributed" to them. *In re M.M.D.*, 662 A.2d 837, 848 (D.C. 1995) (quoting *Dean v. District of Columbia*, 653 A.2d 307, 315 (D.C.1995)). An "indeterminate" sentence has been defined as a sentence for a maximum period imposed either by the court or by statute, which may be terminated by the executive at any time or after service of a specified minimum period. *See Story v. Rives*, 68 U.S.App. D.C. 325, 97 F.2d 182, 187 (D.C.Cir.1938); BLACK'S LAW DICTIONARY 771 (6th ed.1990). In the context of indeterminate sentencing of adult offenders, the phrase "not to exceed" is used in this jurisdiction to create a statutory scheme in which the maximum period of each individual sentence is imposed by the court, and may be less than the maximum authorized by statute. *See* D.C.Code § 24–203(a) (1996); *Banks v. United States*, 307 A.2d 767, 769 (D.C.1973) (sentence of two to six years within statutorily prescribed limits for conviction of second degree burglary carrying maximum sentence of fifteen years); *Martin v. United States*, 435 A.2d 395, 397 n. 3 (D.C.1981) (lawful to impose sentence of three to nine years for forgery conviction carrying maximum sentence of ten years). Therefore, by including both the term "indeterminate" and "not to exceed" in D.C.Code § 16–2322(a)(4), the Council of the District of Columbia authorized the court to be able to impose the minimum and/or maximum duration of the commitment, while the executive has the authority to release the child at any time within the limits set by the judge.[2]

We have held that a statute should be interpreted so as to give effect to every word included in it by the legislature, so that "no part will be inoperative or superfluous, unless the provision is the result of

---

2. We also note that the form order used following the 1993 amendment to record disposition orders contains a blank space to be completed by the judge allowing him to designate the desired length of commitment of the child.

obvious mistake or error." *Marshall v. District of Columbia Rental Hous. Comm'n*, 533 A.2d 1271, 1274 (D.C.1987); *Thomas v. District of Columbia Dep't of Employment Servs.*, 547 A.2d 1034, 1037 (D.C.1988) (internal citations omitted). Subsection (a)(4) of D.C.Code § 16–2322 states that "[s]ubject to subsection (f) of this section, a dispositional order vesting legal custody of a child adjudicated delinquent or in need of supervision ... shall remain in force for an indeterminate period not to exceed the youth's twenty-first birthday." Subsection (f) states that "[u]nless sooner terminated, all orders of the Division under this subchapter in force with respect to a child terminate when he reaches twenty-one years of age." Therefore, if D.C.Code § 16–2322(a)(4) was intended to mean that all initial commitment orders must extend until the child's twenty-first birthday, then the "not to exceed" language is superfluous, for the result for which the District contends could have been achieved by simply stating that "subject to subsection (f), a dispositional order shall remain in force for an indeterminate period."

Furthermore, legislative history suggests that the 1993 amendment to subsection (a)(4) was not intended to make commitment mandatory until a youth's twenty-first birthday. In its analysis of the Bill, the Committee on the Judiciary described what would ultimately become D.C.Code § 16–2322(a)(1) and (a)(4) as follows:

> A dispositional order vesting legal custody of a neglected child shall remain in force for an indeterminate period not exceeding two years. However, for children adjudicated delinquent or in need of supervision, ... the *limitation* on the dispositional orders is an indeterminate period not to exceed the youth's twenty-first birthday.

D.C. Council Comm. on the Judiciary, Council Period IX, Report on Bill 9–374 (1992) (emphasis added). Therefore, the Committee understood the provision as establishing the child's twenty-first birthday as a limitation on the commitment period that could be ordered, rather than as imposing a mandatory or uniform period for all commitments.

We also note that in the 1993 amendment to D.C.Code § 16–2322(a)(4), the Council retained the "not to exceed" language and merely raised the statutory maximum period of commitment from two years to an indeterminate period terminating on the child's twenty-first birthday. Both before and after the 1993 amendment, the "not to exceed" provision has been accepted by the courts as permitting commitments for a shorter period of time than the statutory maximum. *See, e.g., In re R.M.C.*, 719 A.2d 491, 492 (D.C.1998) (noting without discussion that juvenile appellant was ordered committed to custody of Department of Human Services for period of eighteen months). We have also consistently referred to the length of time of the commitments imposed by D.C.Code § 16–2322 as the maximum period allowed. *See, e.g., In re L.J.*, 546 A.2d 429, 432 (D.C.1988) (noting that commitment of no more than two years imposed upon appellant constituted the "maximum" period permitted by law). Notwithstanding the District's position in this appeal, we believe that it has heretofore been accepted practice among all of those involved in the juvenile justice system in the District of Columbia, both before and after the 1993 amendment to the statute that commitments for periods less than the statutory maximum are permissible. Indeed, the District apparently accepted this position in the proceedings in this case before the trial court. Because the Council decided to retain the "not to exceed" language of D.C.Code § 16–2322(a)(4) in the 1993 amendment, while raising the statutory maximum period of commitment from two years to a period ending on the child's twenty-first birthday, we infer that the Council thereby adopted the well-established interpretation of that provision as setting the maximum period, rather than the mandatory length of commitment.

Therefore, the fact that the Council effected an amendment in the same sentence as the previously interpreted language, but did not choose to alter that language, indicates that when the Council reenacted the previous language, it was aware of the provision's long-standing interpretation as setting the maximum and not the mandatory length of commitment.[3]

Further evidence that the provision contained in D.C.Code § 16–2322(a)(4) did not establish a mandatory period of commitment until the child's twenty-first birthday is the absence of any discussion in the legislative history regarding either the need for or the impact of such a change in the disposition structure for juvenile offenders. A requirement that a child be committed until his or her twenty-first birthday would potentially have a major fiscal impact on the Department of Human Services. The absence of any discussion regarding the fiscal or other consequences of the amendment strongly indicates that the Council did not intend to effect a drastic change as the District suggests in this case. *See Covington v. United States,* 698 A.2d 1033, 1036 n. 6 (D.C.1997) (noting how unlikely it was that the Council intended to provide for significant expansion of availability of pre-trial detention in criminal cases without any discussion or debate).

Under the interpretation offered by the District, the trial court would have no discretion to vary the length of commitment according to the seriousness of the offense or the rehabilitative needs of the juvenile. Such an interpretation runs contrary to the notions of fairness and individual treatment embodied in our juvenile justice system. While the legislative history of the amended act may not provide a definitive answer to the question before us, the legislative history of the 1993 amendment to

D.C.Code § 16–2322(a)(4) reveals that the changes were proposed to give trial judges the discretion to commit juvenile offenders for periods greater than two years at a time. The impetus behind the amendment was a perception that neither a juvenile offender in need of substantial rehabilitative services nor a community that had been victimized by the juvenile offender was being well served by a system that relied on DHS, especially given that agency's limited resources, to assess and initiate court actions to extend commitments every two years. If we were to accept the District's interpretation of the amended statute in this case, however, we would be removing all judicial discretion from the initial commitment decision. Instead, it would be up to DHS, with its limited resources, to make timely, regular, and appropriate assessments of committed individuals to ensure their timely release. To be sure, the agency's prior inability to initiate appropriate court actions may have resulted in the premature release of some juvenile offenders. If we were to accept the District's interpretation, however, DHS' failure to meet its obligations in the future might well result in juvenile offenders being detained for substantially longer periods of time than would be reasonable under the circumstances. Given the legislative history of the amendment, we do not believe that the Council intended to curtail judicial discretion in such a dramatic fashion.

■ Because the legislature must be presumed to have acted rationally and reasonably, with an awareness of the goals of the statutory scheme as a whole, *Hessey v. District of Columbia Bd. of Elections & Ethics,* 601 A.2d 3, 16 n. 28 (D.C.1991), the courts eschew interpretations that lead to unreasonable results, *M.M.D.,* 662 A.2d at

---

3. This inference is supported by the fact that no comments or discussion disapproving the long-standing practice of ordering commitment for a period less than the statutory maximum can be found in the legislative history. *See Washington Metro. Area Transit Auth. v.*

*District of Columbia Dep't of Employment Servs.,* 506 A.2d 1127, 1129 (D.C.1986); *Chemehuevi Tribe of Indians v. Federal Power Comm'n,* 420 U.S. 395, 410, 95 S.Ct. 1066, 43 L.Ed.2d 279 (1975).

845 (quoting *Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 754 (D.C. 1983) (en banc)), that create obvious injustice, *id.,* or that produce results at variance with the policies intended to be furthered by the legislation, *James Parreco & Son v. Rental Hous. Comm'n,* 567 A.2d 43, 46 (D.C.1989) (quoting *Perry ·v. Commerce Loan Co.,* 383 U.S. 392, 400, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966)). Therefore, we do not interpret D.C.Code § 16–2322(a)(4) as mandating a uniform length of commitment until a child's twenty-first birthday.

█ Because we interpret D.C.Code § 16–2322(a)(4) as setting only the maximum length of commitment that can be ordered, not a mandatory period, the trial court's original disposition order committing C.L.M. for an indeterminate period not to exceed two years was a legal and valid order. Because there was no "administrative error" for the court to correct, the trial court was without jurisdiction to modify its original commitment order of two years once C.L.M. was committed to the custody of DHS. *In re J.M.W.,* 411 A.2d 345, 348 (D.C.1980). While we have recognized that a trial court "may retain a veto power over release, if specifically ordered at the time of disposition," *id.* at 348 n. 3 (citing D.C.Code § 16–2322(a)(1) (1973)), no such reservation was made in this case, and we have consistently held that "while the court is specifically granted authority to modify or revoke a dispositional order placing a juvenile on probation, the court is without statutory power to intervene after commitment." *Id. See also In re A.A.I.,* 483 A.2d 1205, 1208 (D.C.1984) (once a disposition order is issued and is implemented by DHS, the Division relinquishes its authority to make a new disposition). Once C.L.M. was committed to the custody of DHS, the trial court "relinquished its authority to determine the appropriate measures needed to

insure rehabilitation," and was without jurisdiction to issue a new disposition order absent a fresh delinquency determination. *J.M.W.,* 411 A.2d at 349. Therefore, the trial court's subsequent order of commitment until C.L.M.'s twenty-first birthday was without authority and must be vacated.[4]

*So ordered.*

4. Because we hold that the trial court erroneously interpreted D.C.Code § 16–2322(a)(4) as requiring it to order C.L.M. to be committed until her twenty-first birthday, and that the court did not have jurisdiction to modify its original disposition order, we do not have to reach C.L.M.'s claim that the new disposition was subject to double jeopardy considerations.